**FILED**
**Dec 19, 2022**
**08:27 AM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Derrick Wilson | ) Docket No.     2021-07-0482 |
| | ) |
| v. | ) State File No.  53458-2021 |
| | ) |
| Randstad, Inc., et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) Heard December 2, 2022 |
| Compensation Claims | ) in Nashville, Tennessee |
| Robert V. Durham, Judge | ) |

---

### Reversed and Remanded

---

In this interlocutory appeal, the employee began working for the employer in March of 2021. Subsequently, he noticed increasing pain in his left shoulder. He did not report any specific work accident, but he eventually discussed his left shoulder pain with his primary care physician, which resulted in a referral for an MRI. The MRI revealed a tendon tear in his shoulder, and the employee was referred to an orthopedic physician. Eventually, when the employer learned the employee was having issues with his shoulder, it prepared a first report of injury and provided a panel of physicians. After one visit with the authorized physician, the employer denied the claim, asserting a notice defense as well as a lack of evidence of medical causation and other defenses. Following an expedited hearing, the trial court determined that the employee's failure to provide notice was reasonable and that the employer failed to show actual prejudice caused by the late notice. It further found that the employee had established he would likely prevail at trial on the issue of compensability and was entitled to a panel of orthopedists. The employer has appealed. Having carefully reviewed the record, we reverse the trial court's order and remand the case.

Judge Meredith B. Weaver delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Pele I. Godkin joined.

Sarah H. Reisner and Laurenn S. Disspayne, Nashville, Tennessee, for the employer-appellant, Randstad, Inc.

Jeffrey P. Boyd, Jackson, Tennessee, for the employee-appellee, Derrick Wilson

**Factual and Procedural Background**

Derrick Wilson ("Employee") was employed by Randstad, Inc. ("Employer"), a temporary employment agency, in March 2021. Prior to working in this position, Employee had reported work injuries to both his right and left shoulders while working for another employer. Specifically, Employee previously had been diagnosed with left shoulder impingement in 2009. He settled this prior workers' compensation claim for approximately thirteen percent vocational disability based upon a one percent impairment rating given by his treating physician and a five percent rating given by a physician he retained to perform a medical examination for this condition. The settlement was approved by a Workers' Compensation Specialist at the Tennessee Division of Workers' Compensation.[1]

Following those prior work injuries, Employee was also diagnosed with sarcoidosis and diabetes.[2] As a result of his medical conditions, Employee ceased working in 2010 and began receiving Social Security Disability benefits in 2015. He received ongoing medical care for these and other conditions, including a monthly visit with his primary care physician, Dr. Stephen Collier. Dr. Collier prescribed hydrocodone to Employee at each of these appointments for his chronic low back pain and saw him regularly for general medical complaints. At his December 2020 visit, the medical records of Dr. Collier note a "history of generalized osteoarthritis shoulder pain." At his February 2021 visit with Dr. Collier, Employee stated that his "job at the factor[y] is very stressful and repetitive, but that is the best he can do right now."

Employee began working for Employer in March of 2021 and was assigned to work at Sonoco as a "grease packer." In that position, he was responsible for removing cans from an assembly line, inspecting them for defects, packing them in boxes, and then placing the boxes on a pallet. Employee testified at the expedited hearing that he estimated the boxes to weigh between 50 and 75 pounds. He further testified he sometimes had to assist when the box maker or tape maker went down, and that he occasionally had to carry boxes to find another pallet when the pallets became full.

At some point, Employee alleges he began having increased symptoms in his left shoulder. The first documentation of any specific complaint related to the left shoulder is in the medical record of his June 8, 2021 visit with Dr. Collier. At this appointment for

---

[1] Pursuant to pre-July 1, 2014 law, certain Workers' Compensation Specialists employed by the Tennessee Department of Labor and Workforce Development's Division of Workers' Compensation had the statutory authority to consider and approve settlements. *See* Tenn. Code Ann. § 50-6-206(c) (2013).

[2] Sarcoidosis is a disease characterized by the growth of tiny collections of inflammatory cells, or granulomas, in any part of the body, typically in the lungs and lymph nodes. *See* "Sarcoidosis," https://www.mayoclinic.org/diseases-conditions/sarcoidosis/symptoms-causes/syc-20350358 (last visited December 16, 2022).

medication refills and ongoing medical care, Dr. Collier noted that Employee was "[h]aving more shoulder pain . . . may need MRI." According to a June 30 MRI report, Employee was found to have a "full-thickness full width retracted supraspinatus tendon tear without atrophy."

It is undisputed that Employee did not report a work-related injury to Employer at that time. There was no report of a work injury filed with Employer following the June 8 appointment or the June 30 MRI; no report was prepared until July 9, 2021, when Brittany Bowles, staffing manager at Randstad, met with Employee. At that time, Employee and Ms. Bowles completed an incident form, stating Employee had a sore shoulder due to "continuously stacking boxes over a period of time at the job." A First Report of Work Injury was completed and a medical panel was provided to Employee, from which he selected Dr. Gary McBride. The First Report reflected an injury date of July 9, 2021, but the internal Description of Accident form he also completed on that date reflects that Employee "was not injured on [July 9, 2021], but does not know when he injured his shoulder." Employee attended an appointment with Dr. McBride, who later stated he did not review the MRI but placed Employee on light duty and referred him to an orthopedist. Employee's assignment was terminated on July 12 by Randstad, and his recorded statement was taken July 14, 2021. Employee described ongoing and increasing symptoms in his shoulder in his recorded statement. He was unable to identify an exact date of injury but stated at the time that he believed the symptoms began a week or two before his regularly scheduled June 8 appointment with Dr. Collier.

Thereafter, Employer denied the claim on several bases, including medical causation, compensability, existence of a pre-existing condition, and notice. Consequently, Employee proceeded on his own to an orthopedist, Dr. Jason Hutchinson, on August 30, 2021. At that visit, Employee reported left shoulder pain, and Dr. Hutchinson's report reflects that Employee reported hurting his shoulder on July 9, 2021 at work. Employee also stated that his claim had been denied and that he was there on his personal insurance. He described a job with "constant repetitive motion of stacking and loading large boxes of cans." He further reported "constant pain and occasional popping." Dr. Hutchinson reviewed Employee's MRI and other medical records, diagnosed Employee with a rotator cuff tear, and recommended surgery. A month later, Dr. Hutchinson apparently responded to an inquiry from Employee's counsel regarding the alleged work injury.[3] In his response, Dr. Hutchinson stated that Employee "represented to me that his shoulder began hurting after doing constant stacking of large boxes at work. . . . In a 46-year-old, [a significant rotator cuff tear] generally does occur from an acute event." He then responded to several questions as set forth below:

---

[3] The record does not contain a copy of the correspondence from Employee's counsel, only Dr. Hutchinson's response.

1. Did Mr. Wilson's work injury aggravate or exacerbate the pathology that had previously been clinically silent or asymptomatic?

[A:] I simply do not have a history this pathology was pre-existing. Mr. Wilson represented to me this injury came from work. . . . Nevertheless, in response to your question, if I were to assume this is a pre-existing condition, then certainly lifting and stacking heavy items could aggravate or exacerbate that pathology.

2. Was the work injury more likely than not the cause of the aggravation or exacerbation of the pathology that had been previously silent or asymptomatic?

[A:] Certainly, based on the history given to me by Mr. Wilson himself, he believes work to be the cause of his current symptoms. Once again, I was not aware that this was a pre-existing condition, and in that regard, it is difficult for me to directly answer your question beyond the response above.

3. Could Mr. Wilson's job duties, which are 12-hour shifts of boxing cans, taping boxes, moving boxes weighing up to 50-60 pounds, and stacking boxes weighing 50-60 pounds cause the injury that Mr. Wilson sustained on the job?

[A:] Obviously, lifting heavy things is a sufficient mechanism to cause or aggravate a rotator cuff tear. So, in that regard, the job described in this question certainly could cause or aggravate a rotator cuff tear.

Dr. Hutchinson added the following to the end of the correspondence:

I would certainly want to make clear that I apparently do not have the entire history as pertains to pre-existing conditions in this gentleman's shoulder, and therefore reserve the right to change or modify my opinion should additional history or medical records be made available in the future.

In November 2021, Employee saw Dr. Kenneth Nord under his private insurance for another evaluation. Dr. Nord provided a diagnosis of "complete rotator cuff tear/rupture of left shoulder, not trauma, impingement syndrome, and primary [osteoarthritis] of the left shoulder." He did agree that surgery was necessary.

Employee filed a Request for Expedited Hearing in May 2022 with a supporting affidavit. In the affidavit, Employee states "[o]n July 9, 2021, I was on the assembly line staking [sic] boxes when I felt a pop in my left shoulder." However, at his deposition taken

4

later that month, Employee denied the alleged incident occurred on July 9, 2021, although he was unable to identify the date on which it had occurred. Instead, Employee testified that he felt a "pop" in his shoulder on a day when fewer employees than usual were on site. He stated that he did not report the incident when it happened, believing it would get better without treatment. At that time, he estimated that the incident occurred a "few weeks before" July 9. Employee also asserted he told his wife that he was having shoulder pain and that he took over-the-counter anti-inflammatories. Employee testified that instead of reporting the "popping" incident, he told Adriane Ingram, his lead at Sonoco, that he was having "real bad shoulder pains," prompting her to ask if he wanted to report a work injury.[4] Employee declined to report any work injury at that time but testified another meeting was held at which Ms. Ingram; Tony Phelps, a Production Shift Supervisor; Chris Barnett, a safety officer; and an employee named "Oliver" were present. Employee stated that one or more of them offered to allow him to change to a different job position, which he also declined. He was then contacted by Ms. Bowles with Randstad to complete paperwork regarding his apparent work injury, and they met on July 9.

Also during his deposition, Employee denied having any prior problems with the left shoulder and further denied filing any prior workers' compensation claims for a left shoulder injury. He later clarified that he did have some numbness in the left shoulder in 2009 and received medical care but did not need surgery and did not know his diagnosis. He also stated that, at the time he began working for Randstad, he had numbness in both the right and left shoulders to a degree that he "couldn't sleep at night sometimes," although he had not sought medical treatment under the terms of his prior workers' compensation settlements.

After taking Employee's deposition, Employer forwarded a questionnaire to Dr. Hutchinson regarding causation in light of Employee's prior conditions. In his response, Dr. Hutchinson indicated he had reviewed prior medical records of Employee since his visit of August 2021. He stated that those records changed his initial medical opinion regarding causation from his earlier correspondence to counsel for Employee, but he did not state how his opinion had changed.

At the expedited hearing in July 2022, Employee testified he injured his shoulder on a day when he and his co-worker were "short on help." He reported that he felt a "pop" in his left shoulder, and while he did speak with his supervisor that day, he did not report any injury. Employee could not testify as to when the "pop" occurred, but he believed at the time he was just "overworked." He again testified he did not intend to report any work accident involving the left shoulder, stating that he "didn't have no [sic] intentions of it being a workman's [sic] compensation claim." However, he described regularly lifting boxes that were over 50 pounds in the course of his job duties, and he denied having any

---

[4] Based upon Employee's testimony, this conversation with his Sonoco lead apparently occurred after he had already undergone the MRI that showed the tendon tear.

recollection of receiving Employer's employee handbook that prohibited employees from lifting over 50 pounds. He denied having any issues with his left shoulder at the time he went to work at Sonoco and stated he could not recall if he had a prior workers' compensation claim for the left shoulder or whether he had any permanent restrictions from any prior left shoulder injury. Employee testified he currently works for another employer.

For its part, Employer offered the affidavits of Adrienne Ingram and Tony Phelps, both Sonoco employees identified by Employee as having been aware of his left shoulder complaints, as well as the testimony of Ms. Bowles. The witnesses' recollections of the events differ significantly from Employee's, in that the Sonoco employees who offered affidavits denied the occurrence of any group meeting in which a work injury was discussed. Ms. Ingram testified in her affidavit that she noticed Employee, at some point during his employment, performing what appeared to her to be shoulder exercises. When she asked him about this behavior, Employee stated he had hurt himself on a previous job and denied having an injury at Sonoco. Ms. Ingram indicated she believed she informed her supervisor, Mr. Phelps, about this conversation. Mr. Phelps testified that he did have a conversation with Employee about his left shoulder and that Employee stated he was "fine" and "ok."

Ms. Bowles testified live at the expedited hearing in her capacity as the former staffing manager of the Jackson, Tennessee Randstad office.[5] She testified she was informed via email that an employee assigned to Sonoco "might" have an injury. Thereafter, she texted Employee to come to Employer's office to complete the appropriate paperwork. Ms. Bowles testified Employer had specific lifting policies, and she went to the Sonoco facility to conduct an investigation, which included a tour and observation of the job performed by Employee with Mr. Phelps. She testified the weight of the full boxes was "just shy of 30 pounds," which did not violate Employer's safety policies.

Following the hearing, the trial court determined that Employee had failed to give proper notice within 15 days of the injury pursuant to Tennessee Code Annotated section 50-6-201(a) (2021). However, the court found Employee had a "reasonable excuse" in delaying notice for, by its own estimation, at least six weeks. Furthermore, the court ruled that even if there had not been a reasonable excuse, Employer had failed to show actual prejudice caused by the delayed notice. The court further determined Employee had not shown evidence of medical causation but that the lack of medical proof did not eliminate Employer's legal obligation to provide a medical panel. It therefore ordered Employer to provide a panel of orthopedists. Employer has appealed.

---

[5] That office closed on July 1, 2022.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2022). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2022).

**Analysis**

On appeal, Employer identifies four issues, which we restate as follows: (1) whether the trial court erred in determining the lack of notice was excusable, that there was no prejudice, and thus the claim was not barred; (2) whether the trial court erred in determining Employee was a credible witness; (3) whether the trial court erred in ordering Employer to provide a panel without a medical opinion as to causation; (4) whether the trial court correctly determined that Employee had come forward with sufficient evidence indicating a likelihood of proving at trial the occurrence of an event or series of events causing a work-related injury. Because the requirement to identify a work incident or set of incidents identifiable by time and place of occurrence is a threshold determination, *see* Tennessee Code Annotated section 50-6-102(12)(A), we address it first. *See Johnston v. Siskin Steel & Supply Co./Reliance Steel & Aluminum Co.*, No. E 2020-00799-SC-R3-WC, 2021 Tenn. LEXIS 241, at *5 (Tenn. Workers' Comp. Panel Feb. 10, 2021).

At an expedited hearing, "an employee need not prove every element of his or her claim by a preponderance of the evidence . . ., but must instead present evidence sufficient for the trial court to conclude that the employee would likely prevail at a hearing on the merits." *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). We have previously described this as a "lesser evidentiary standard" than the burden imposed at trial. *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). However, the employee must still come forward with sufficient evidence of a specific incident or set of incidents

7

identifiable by time and place of the occurrence that caused the alleged injury to show a likelihood of prevailing at trial. *See* Tenn. Code Ann. § 50-6-102(12)(A).

Employee argues that he has suffered both an acute and gradual injury to the left shoulder as a result of his work at Sonoco. As such, before considering whether Employee gave proper notice, whether a delay of notice was prejudicial to Employer, or even whether Employee is credible, we must consider whether Employee has provided sufficient evidence to show he will likely prevail at trial in proving the occurrence of an incident or set of incidents resulting in an injury or injuries. We determine he has not at this stage of the case.

The record reveals multiple potential dates on which an accident may have occurred, none of which have been proven by a preponderance of the evidence. In his recorded statement, Employee "estimated" his pain became severe "about a week or two" prior to his June 8 appointment with Dr. Collier. However, the First Report of Work Injury identifies July 9, 2021 as the date of injury, as does Employee's sworn affidavit filed in support of his Request for Expedited Hearing. Moreover, the First Report of Work Injury describes a gradual injury from repetitive lifting, while Employee's affidavit states he felt a "pop" on July 9. Employee also initially reported to Dr. Hutchinson that his injury occurred on July 9, 2021, stating he "believes he hurt his shoulder" on that date. Yet, his report to Dr. Collier on June 8, 2021 was that he was having "more" shoulder pain, with no description of any type of trauma, and the MRI that revealed the tendon tear was performed on June 30, 2021, nine days *before* the date of accident asserted in Employee's sworn affidavit. The trial court determined Employee's date of injury was "at least six weeks" prior to his giving notice to Employer. However, Employee did not testify to that at the hearing. Indeed, when asked on direct examination, he testified "it was around June 30th." Later, Employee testified that the "pop in his shoulder" was documented as having occurred on July 9, but it was "probably a week or so prior." Finally, at various points in the record, Employee asserts a specific incident at work when he felt a "pop" while lifting, but at other times, he described repetitive lifting of boxes over an unspecified period of time as the alleged cause of his shoulder injury. On occasion in his testimony at trial and in his deposition, he also described ongoing "popping" as opposed to one specific "popping" incident.

In a prior case, *Smiley v. Four Seasons Coach Leasing, Inc.*, Nos. 2016-06-0104 & -0105, 2016 TN Wrk. Comp. App. Bd. LEXIS 28 (Tenn. Workers' Comp. App. Bd. July 15, 2016), we discussed the requirement that an injured worker present sufficient evidence of an injurious incident or set of incidents to satisfy the employee's lower burden of proof at the expedited hearing. The employee in that case, a bus driver, reported back, shoulder, and hip injuries as a result of using a defective seat on the bus he was driving. *Id*. at *6. He specifically described a nineteen-day period when he began to notice increasing symptoms. *Id*. At the conclusion of that job, he told his employer he was going to try to "get [himself] mended up" over the holidays. *Id*. at *6-7. When he continued to have

symptoms, he requested medical attention from his employer. *Id.* at *7. We concluded in that case that the employee had sufficiently identified an injurious set of incidents by time and place of occurrence, as he was able to definitively describe the time period during which his symptoms began and worsened and the specific work activities that caused his symptoms. *Id.* at *22.

Unlike in *Smiley*, we can find nothing in the record of the present case to support a finding that Employee has consistently identified a single injurious incident, a set of injurious incidents, the date on which his symptoms began, or the specific work activity that caused his injury. If Employee's position is that he suffered both an acute injury and a gradually-occurring injury, there is no explanation in the record as to how or when the acute injury occurred, how or when the gradual injury manifested itself, or how the acute injury and gradual injury relate to each other, if at all. As such, we conclude Employee has not come forward with sufficient evidence of "a specific incident, or set of incidents, . . . identifiable by time and place of occurrence," as required by Tennessee Code Annotated section 50-6-102(12)(A), to indicate a likelihood of prevailing at trial on this threshold determination. *See Buchanan*, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6. In short, although the standard of proof is lower at the interlocutory stage of a case, Employee must still "come forward with more than a mere allegation of alleged work-related injuries to support his claim for authorized medical treatment." *Morton v. Morsey Constructors d/b/a Harper Industries*, No. 2021-06-0129, 2021 TN Wrk. Comp. App. Bd. LEXIS 33, at *14 (Tenn. Workers' Comp. App. Bd. Oct. 4, 2021).

Because, at this stage, Employee has failed to sufficiently identify an injurious incident or set of incidents by time and place of occurrence, we conclude he cannot meet his burden of proof in establishing he is likely to prevail at trial in proving a compensable accident. Thus, all other issues raised in this appeal are pretermitted.

**Conclusion**

For the foregoing reasons, we reverse the trial court's order awarding medical benefits and remand the case. Costs on appeal are taxed to Employee.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Derrick Wilson | ) | Docket No. 2021-07-0482 |
| | ) | |
| v. | ) | State File No. 53458-2021 |
| | ) | |
| Randstad, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard December 2, 2022 |
| Compensation Claims | ) | in Nashville, Tennessee |
| Robert V. Durham, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 19th day of December, 2022.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Sarah Reisner<br>Laurenn S. Disspayne | | | | X | sreisner@manierherod.com<br>ldisspayne@manierherod.com<br>epryce@manierherod.com |
| Jeffrey P. Boyd | | | | X | jboyd@borenandboyd.com<br>scallison@borenandboyd.com |
| Robert V. Durham, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |



Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov